# Ganster v. Metropolitan Electric Company, Appellant.

*Corporations—Electric light company—Operation of plant—Nuisance—Damages.*

An owner of a building adjoining an electric light plant may recover damages from the electric light company for the operation of its works in such way as to create a nuisance resulting in injury to plaintiff's tenement.

In the absence of authority conferred by its charter a corporation will not be relieved from liability for specific injury to private property resulting from the exercise of its corporate powers. In this respect a corporation occupies the same position and is responsible for its injurious acts to the same extent that a natural person is.

If the annoyance or damage arising from a nuisance is such as to destroy or substantially impair the legitimate use or enjoyment of private property and so amount to a taking, the person injured is entitled to recover notwithstanding the fact that the defendant company possesses the power of eminent domain.

No person's property can be taken, injured or destroyed without compensation and a corporation can only injure or destroy property when it possesses the power conferred by the state and exercises that power in the manner provided by the statute.

A second action for nuisance may be maintained where there is a continuing nuisance.

Punitive or exemplary damages may be recovered in a second or subsequent suit for the continuance of a private nuisance. It is the duty of the defendant to abate the nuisance after the recovery of a judgment in the first action, and if he fails to do so and continues it, it aggravates the injury and enlarges the damages which may be recovered in the second action.

Argued Feb. 26, 1906.   Appeal, No. 58, Jan. T., 1905, by defendant, from judgment of C. P. Berks Co., Nov. T., 1898, No. 36, on verdict for plaintiff in case of William F. Ganster et al. v. Metropolitan Electric Company.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Trespass to recover damages for a continuing nuisance.   Before ERMENTROUT, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $3,729.16.   Defendant appealed.

*Error assigned* among others was in giving binding instructions for defendant.

*Richmond L. Jones*, for appellant.—Where, by the operation of an electric light plant, adjoining property is depreciated in value, both present and future damages may be allowed in an action to recover for such loss : Hyde Park Thomson-Houston Light Co. v. Porter, 167 Ill. 276 (47 N. E. Repr. 206) ; Penna. R. R. Co. v. Lippincott, 116 Pa. 472 ; Penna. R. R. Co. v. Marchant, 119 Pa. 541 ; Keiser v. Gas Co., 143 Pa. 276 ; Robb v. Carnegie, 145 Pa. 324 ; Brown v. Radnor Twp. Electric Light Co., 208 Pa. 453.

*Jefferson Snyder*, of *Snyder & Zieber*, and *Cyrus G. Derr*, with them *Edward S. Kremp*, for appellees.—Where a corporation is clothed with the right of eminent domain, and is expressly authorized by law to construct its works and operate them, any injury resulting from such operation, without negligence and without malice, is damnum absque injuria ; but where a corporation has no right of eminent domain, the operation of its works, causing consequential injuries to another, is a nuisance : Hauck v. Tidewater Pipe Line Co., 153 Pa. 366.

A second suit may be maintained : South Bethlehem Gas & Water Co. v. Yoder, 112 Pa. 136 ; Mountz v. Phila., etc., R. R. Co., 203 Pa. 128 ; Hartman v. Inclined Plane Co., 159 Pa. 442.

The jury are warranted in assessing punitive damages for the continuance of the nuisance in this case : McCoy v. Danley, 20 Pa. 85 ; Ellis v. Academy of Music, 120 Pa. 608.

OPINION BY MR. JUSTICE MESTREZAT, April 9, 1906:

The learned trial judge correctly decided the controverted questions in this case, and the reasons given and the authorities cited in his opinion in discharging the rule for judgment non obstante veredicto fully justify his conclusion.

This is an action of trespass to recover damages for injuries to the buildings on the plaintiffs' lot caused by the operation of the machinery in the defendant's electric light plant on the adjoining lot. The plaintiffs' allegation here, sustained by the judgment in a former action, is that the defendant company " so attached their works and buildings to ours, that in operating its works it grievously injured our buildings and rendered them untenantable." It is claimed and the evidence tended to show that the defendant's building was so constructed that the vibrations produced by the operation of the ponderous machinery therein "shook the buildings of the plaintiffs, that the shaking was not of the ordinary character, but was of such a nature as to cause the plaster to fall off from the walls, pictures to fall from the walls, windows to rattle, panes to fall out, some cracks in walls, and crockery to fall from shelves or cupboards." In other words, it is alleged and a judgment of the court below has determined that the continuous operation of the defendant's light plant will in time result in the destruction of the buildings on the plaintiffs' adjoining lot.

In the absence of authority conferred by its charter, a corporation will not be relieved from liability for special injury to private property resulting from the exercise of its corporate powers. In this respect a corporation occupies the same position and is responsible for its injurious acts to the same extent that a natural person is: Rogers v. Philadelphia Traction Company, 182 Pa. 473. In that case, Chief Justice STERRETT, in delivering the opinion, says (p. 477) : " There is certainly nothing in its (traction company) charter to relieve the defendant from liability for the special injury which the plaintiff has suffered in consequence of its operations on its own land, as determined by the verdict. As an artificial person it cannot, any more than a natural person, escape liability for special injury done to others, unless it can be shown that because it is a mere creature of the law it enjoys immunity from liability which natural persons do not; but no such proposition as that

has ever been recognized in any well considered case.    No authority for it can be found in Pennsylvania Railroad Co. v. Lippincott, 116 Pa. 472; Pennsylvania Railroad Co. v. Marchant, 119 Pa. 541, or any of that line of cases.    It is not only untenable in law, but it is lacking in reason.    If several individuals had purchased the defendant company's lot and erected thereon the machinery and appliances that it did, and had operated the same as it has done to the great and manifest special injury of the plaintiff, no one would venture to question their liability to respond in damages."

The defendant corporation was clearly liable for the nuisance committed against the plaintiffs in the operation of its plant. The learned counsel for the defendant company bases its right to immunity for the commission of the nuisance on the ground that his company has the right of eminent domain.    He cites and relies on the recent case of Brown v. Radnor Township Electric Light Company, 208 Pa. 453, as establishing the doctrine that electric light companies, chartered under the Act of May 8, 1889, P. L. 136, possess the power of eminent domain. He clearly misapprehends the ruling in that case and misapplies the doctrine there announced to the facts of the case in hand.    There, the owner of the land through which a turnpike road passes filed a bill to enjoin the electric light company from erecting its poles and stringing its wires in the bed of the side of the road through his land.    The court below refused the injunction and its decree was affirmed by this court.    It was held that as by the express terms of the act of 1889 the light company had "the right to enter upon any public street, lane, alley or highway" for the purposes of its incorporation, it was authorized to erect its poles and string its wires in the bed of the turnpike road through the plaintiff's land and to that extent it had the right of eminent domain.    The right of an electric light company to condemn land for its power house, or to exercise the power of eminent domain generally, did not arise and was not determined by the decision in the case.    The right to erect their poles on a public road or highway was held to be conferred on such companies only by reason of the express language of the act authorizing their incorporation.    It was said in the opinion, quoting from Pennslyvania Railroad Company v. Canal Commissioners, 21 Pa. 9, that "cor-

porate powers can never be created by implication nor extended by construction." No part of the act expressly invests electric light companies with the power to condemn lands other than those in roads or highways in which the company is permitted to erect its poles. It is clear, therefore, that the case cited by the defendant's counsel does not sustain his position that his company possesses the unlimited right of eminent domain.

But if it be conceded that the defendant company is invested with the full power of eminent domain, it was not justified in committing the injurious acts complained of in this action. Such authority would not legalize a nuisance of this character. In 21 Am. & Eng. Ency. of Law (2d ed.), 737, it is said, numerous authorities being cited to support the proposition: "If the annoyance or damage arising from the nuisance is such as to destroy or substantially impair the legitimate use and enjoyment of private property, and so amount to a taking, the person injured is entitled to redress, notwithstanding the legislative authorization." The acts complained of here, it will be observed, are not mere trifling annoyances or discomforts created by smoke or noise or dust resulting from the operation of the plant, but were real and substantial injuries to the plaintiffs' building, causing its walls to shake and crack, and, in time if the nuisance is persisted in, necessarily resulting in the destruction of the building. No person's property can in this state be taken, injured or destroyed without compensation, and a corporation can only injure or destroy property when it possesses the power conferred by the state and exercises that power in the manner provided in the statute. Until the defendant company, therefore, has exercised its alleged right of eminent domain and by the authority thereof acquires plaintiffs' property, its illegal acts resulting in a substantial impairment and, finally, in the destruction of the property constitutes an actionable nuisance for which it is liable in this action. This case is not ruled by Pennsylvania Railroad Company v. Lippincott, 116 Pa. 472, and Pennsylvania Railroad v. Marchant, 119 Pa. 541, relied on by the defendant's counsel to support his position. In those cases the injuries were caused by the noise, smoke and dust from the defendant company's engines and cars used in operating its railroad on a viaduct on its own land on the opposite side of a street from the plaintiffs'

premises.  Here the defendant company erected its plant on land purchased for the purpose and in immediate contact with the plaintiffs' buildings and so constructed the foundation and floor of its building that the operation of the heavy machinery resulted directly in destroying the use of the plaintiffs'·buildings.  It is therefore apparent and needs no argument to show that the defendant's contention in the case in hand finds no support in the Lippincott and Marchant cases.

There is no merit whatever in the defendant's position that the verdict and judgment in the first case is a bar to the present action.  The first action, like the present, was to recover damages for a continuing nuisance created by the operation of the defendant company's electric light plant on the adjoining lot. Damages were recovered for the injury to the plaintiffs' buildings and for the loss of rent of the buildings up to the date of bringing the action.  The present suit was brought by privies in title to the plaintiffs in the prior action, for injuries of the same character and occasioned by the same operation of the machinery in the defendant's electric plant subsequent to the date to which damages were recovered in the former action. As well said by the learned trial judge in speaking of the measure of damages and the cause of action in the first suit : " The measure of damages was not the permanent injury done to the real estate ; it was not a question of depreciation in market value, but simply one of the value of the necessary repairs and the depreciation in rental value caused by the operation of the defendant's plant.  How plaintiffs' property would be injured in the future could not have been foretold.  What depreciation there might have been in rental value could not have been foreseen.  There was no permanency to be calculated upon in the operations of the company.  They could suspend their working.  It could not be assumed that defendant would continue the unlawful infliction of injury upon the plaintiffs after the trial, notwithstanding defendant contended it was not responsible for any injury at all.  In point of fact, therefore, the first suit was not for permanent injury, and, therefore, the position of the defendant indicated in the reserved point (that the judgment in the first suit was a bar to any further action) is untenable."  The injury done to the plaintiffs' property from time to time was a continuing nuisance and hence no ac-

tion would be a bar to a subsequent action except as to the damages sustained and recovered to the date of bringing the prior suit.

It is well settled that punitive or exemplary damages may be recovered in a second or subsequent suit for a continuance of a private nuisance.   It is the duty of the defendant to abate the nuisance after the recovery of a judgment in the first action, and if he fails to do so and continues it, it aggravates the injury and enlarges the damages which may be recovered in the second action: McCoy v. Danley, 20 Pa. 85; Ellis v. Academy of Music, 120 Pa. 608.   In these and other decisions of this court it is held that a judgment in favor of the plaintiff in the first action fixes the liability of the defendant and is decisive of the parties' rights in the controversy.

The assignments of error are overruled and the judgment is affirmed.